IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**DRANSON PHAM**                                                                                          **PLAINTIFF**

**v.**                                                          **CIVIL ACTION: 1:14cv12-HSO-RHW**

**HONG VAN NGUYEN, and**
**MEN THI LY**                                                                                          **DEFENDANTS**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING PLAINTIFF'S CLAIMS

This case came before the Court on April 14, 2016, for a non-jury trial. Plaintiff Dranson Pham ("Plaintiff") sought damages from Defendants Hong Van Nguyen and Men Thi Ly ("Defendants") based on (1) breach of an alleged oral partnership agreement to operate a fishing vessel, the F/V Miss Kim (the "Miss Kim"), and (2) a check Plaintiff received from Defendant Ly for $20,000.00 that was dishonored for insufficient funds.  *See* Am. Compl. [6], at 7–8; Pretrial Order [58], at 2.  Having considered the testimony and evidence in this case, along with the arguments of counsel and the parties' proposed findings of fact and conclusions of law, the Court by a preponderance of the evidence makes the following findings of fact and reaches the following conclusions of law, and concludes that Plaintiff has not established, by a preponderance of the evidence, the existence of a partnership agreement or that he is entitled to civil damages under Mississippi's bad check statutes, Mississippi Code Annotated §§ 11-7-12, 97-19-57.  Plaintiff's claims will be dismissed with prejudice.

I. <u>PROCEDURAL HISTORY</u>

Plaintiff instituted this civil action on January 10, 2014, bringing claims against Defendants for breach of contract arising out of the ownership and operation of the Miss Kim, and for statutory damages based upon a dishonored check. Compl. [1], at 3. Plaintiff asserted that federal jurisdiction over this dispute was proper pursuant to the Court's admiralty jurisdiction, 28 U.S.C. § 1333, and based on diversity of citizenship, 28 U.S.C. § 1332. Defendants filed a Motion [3] for a More Definite Statement, which was granted by agreement on February 19, 2014. Thereafter, Plaintiff filed an Amended Complaint [6], specifying additional details about the purported oral partnership agreement that formed the basis of Plaintiff's breach of contract claim. Am. Compl. [6], at 2–5.

Defendants filed an Answer [7] to the Amended Complaint on April 3, 2014. On April 15, 2014, Defendants filed a demand for jury trial and asserted that maritime jurisdiction was improper. The parties subsequently agreed to proceed with a non-jury trial. *See* Notice of Withdrawal of Jury Demand [56]; Joinder in Notice of Withdrawal [57]. Following a pretrial telephonic status conference held on April 4, 2016, the parties further stipulated that Mississippi law would govern all issues in the case. *See* Stipulation [59]; Joinder [60].

The Court conducted a bench trial in this matter on April 14, 2016. Plaintiff and Defendants primarily speak the Vietnamese language. At trial, each side employed the services of their own selected interpreter to translate the proceedings and the witnesses' testimony into English. At the conclusion of the trial, the parties

confirmed that they were each satisfied with the services of their chosen interpreters. The parties have also submitted proposed Findings of Fact and Conclusions of Law for the Court's consideration.

## II. FINDINGS OF FACT

A. <u>The Parties</u>

Plaintiff is a fisherman by trade with over thirty years of experience working as an owner and captain on various fishing vessels. Plaintiff became acquainted with Defendants after Hurricane Katrina in 2005. Plaintiff owned and operated his own shrimping vessel, the Miss Tina, before he began his business relationship with Defendants, which commenced when Plaintiff became the Captain of the Miss Kim in November 2009.

Defendants are married and together they own several vessels. Defendants own the Miss Kim through their jointly-owned limited liability company, Hong and Men V, LLC.[1] At trial, Defendant Nguyen testified that he owned five shrimping vessels with his wife. Defendants are not directly involved with daily fishing operations, but hire captains to run these vessels.

Plaintiff and Defendants testified that captains on such vessels are typically responsible for conducting daily fishing operations, steering the vessel, hiring a crew, and making routine repairs or hiring a shipyard for more significant repairs. The parties acknowledged that captains traditionally receive a 50% share of the

---

[1] The Miss Kim has since been renamed the F/V Andy Charlie, but will be referred to throughout by its original name, the Miss Kim.

3

proceeds of each catch, after expenses are deducted for fuel and other costs, and the remaining 50% share goes to the owners of the vessel. From the captain's 50% share, he must pay the crew and he is entitled to any remainder as wages.

B.     The Vessel Purchase

Defendant Nguyen testified that he first became interested in purchasing the Miss Kim in July 2009. The Miss Kim was owned by Kim Huynh through a corporation, New Way, Inc. Over several months, Defendants negotiated a purchase agreement with Kim Huynh. On November 10, 2009, the sale was executed and a written Bill of Sale was created in Vietnamese. *See* Ex. D-9. An English translation of the Bill of Sale was admitted in evidence as Exhibit D-10.

According to Defendant Nguyen's trial testimony and the Bill of Sale, the negotiated total purchase price for the Miss Kim was $420,000.00. Exs. D-9–10. Defendant Nguyen testified that he paid Huynh $120,000.00 at the time of sale, $25,000.00 of which was a down payment made by check. Defendants then owner-financed approximately $260,000.00 of the purchase price through a Small Business Administration ("SBA") loan taken out by New Way, Inc. Defendants also agreed to sign a lien letter in the amount of $300,000.00 with Huynh Investment Co., as security for the SBA loan and to satisfy an existing lien on the vessel in favor of Caterpillar Financial Services Corporation. *See* Exs. D-10, at D-7.

The sale documents reflect additional terms of the sale including the purchase amount for the transfer of licenses on the vessel, and identify the

purchasers as Hong Van Nguyen and Men Thi Ly. *See* Exs. D-9–10. Plaintiff's name does not appear on the Bill of Sale. *See id.*

On April 19, 2011, Defendants recorded a Bill of Sale dated February 21, 2011, with the United States Coast Guard's National Vessel Documentation Center in Falling Waters, West Virginia, documenting their ownership of the vessel under the name of their company, Hong & Men V LLC, and reflecting that the vessel was purchased from New Way, Inc. Ex. D-7. The Abstract of Title for the vessel further reflects the April 19, 2011, filing of a Satisfaction of Mortgage in the amount of $256,000.00 granted by the SBA to New Way, Inc. *Id.*

At trial, Plaintiff was asked about his knowledge of the terms of the foregoing purchase, and testified that Defendants told him the purchase price was $375,000.00. Plaintiff was presented with the sale contract, Exhibit D-9, and testified that he had never seen or read the document. Plaintiff was also presented with the amortization schedule for payments on the loan on the Miss Kim from Huynh Investment Co., Inc., Exhibit D-16, and testified that he had never seen it before. The amortization schedule reflected that quarterly payments were due on the vessel beginning February 10, 2010, in amounts of roughly $10,028.13 each. *See* Ex. D-16. Plaintiff testified that the mortgage payment was $9,000.00 quarterly, of which he would pay half, $4,500.00, to Defendants in cash every three months.

5

### C.  The Parties' Business Relationship

Defendant Nguyen testified that he contacted Plaintiff on November 10, 2009, and asked him to work as Captain of the Miss Kim.  Plaintiff agrees that he was asked to work as Captain of the vessel, but further alleges that the parties orally agreed to form a partnership.  Plaintiff testified that the terms of this purported partnership were that Plaintiff would make a $20,000.00 cash down payment towards the purchase of the vessel, contribute his expertise as Captain, and the parties would then split all profits and expenses in half, including the costs for insurance, mortgage payments, and supplies for the vessel, such as food and oil.  Plaintiff testified that this was an oral agreement only, and he did not confirm the terms in writing.  According to Plaintiff, Defendant Ly told him that after he worked as Captain for awhile, his name would be added to the title on the vessel.

The parties agree that Plaintiff was responsible for traveling to Port Arthur, Texas, to retrieve the vessel from the seller and bringing it back to begin fishing operations.

On the trip to retrieve the vessel, Plaintiff was accompanied by Quang Thanh Le, who testified as Plaintiff's only other witness at trial.  Le is a fisherman who has worked with Plaintiff in the past, including on the Miss Kim.  At trial, Le claimed that he had overheard the basic terms of the oral partnership agreement as Plaintiff had described them, "the split between the payment to put the deposit or down payment for the boat, and for Mr. Pham to go to work for a couple months and then put the boat under Mr. Pham [sic] name."  Under cross-examination, however,

defense counsel asked Le if Plaintiff had told him what to say about the partnership that may have existed.  In response, Le testified through the translator to his limited knowledge of the arrangement saying,

> [t]he partnership between them, he [Le] doesn't know—that's between them. That's not his business.  His part was just to go help Mr. Pham to go pick up the boat and work on the boat.

Le also testified that he had not heard why the partnership ended.  The Court did not find Le's testimony or version of events credible.

Plaintiff testified that throughout the course of the partnership, most of his payments to Defendants were made in cash, including the initial $20,000.00.  However, at trial Plaintiff did not produce any bank records or other independent evidence to document his financial contributions to the purported partnership.

Plaintiff did produce a single check he wrote to Defendant Nguyen dated June 13, 2010, in the amount of $9,350.00, and claimed that it represented his contribution to mortgage payments.  *See* Ex. P-9.  Defendants testified that this check was written when Plaintiff bought jewelry from Defendant Ly for his fiancé, and that the check was unconnected to fishing operations.  The amortization schedule reflects that payments on the Miss Kim were due on February 10, 2010, May 20, 2010, and August 20, 2010, but no payment would have been due in June when this check was written. Ex. D-16.  The amount of Plaintiff's check, $9,350.00 is also at odds with the periodic payment amounts listed on the amortization schedule, $10,028.13, and with Plaintiff's claim that the parties were to "split" the mortgage payments.  Plaintiff testified that this discrepancy was due to the fact

7


that he still owed Defendants money for "the first . . . couple of months [when] they didn't make any money."

Plaintiff produced four other checks made out by Defendants to him as evidence that he was reimbursed for various expenses related to the Miss Kim. Exs. P-5–8. These checks were each dated from August–September 2010. *Id.* Defendants contradicted Plaintiff's explanation for each of these checks at trial by insisting that the checks represented Plaintiff's wages while the Miss Kim participated in the Vessels of Opportunity program as part of the clean-up effort following the 2010 British Petroleum ("BP") oil spill in the Gulf of Mexico. During this time, Plaintiff was paid a daily wage rather than with a percentage of the catch proceeds. *See* Defs.' Proposed Findings [64], at 2.

Under their company name, Hong & Men V, LLC, Defendants issued Plaintiff and the other employees on the vessel 1099 forms for use in filing federal income taxes for the year 2010. Exs. D-2–D-6. No evidence was presented at trial that any party ever filed taxes in the name of the purported partnership.

D.      Termination of the Parties' Business Relationship and Purported Buyout

Plaintiff worked as Captain on the Miss Kim until December 2010, when Plaintiff alleges that Defendants decided to buy out his partnership interest. According to Defendants, however, Plaintiff was fired from his job as Captain in December 2010. Defendants claimed at trial that when the freezer on the vessel malfunctioned on the last voyage, Plaintiff failed to timely return to shore, resulting in the spoiling of the shrimp caught on that trip. To support their version of events,

Defendants referenced a sales receipt from this last voyage produced by Plaintiff which showed no listed sale price for that particular catch and described the quality of the shrimp as "3," which Defendants testified indicates that the shrimp were spoiled and black. Ex. P-1, at p. 14.

Plaintiff testified that the terms of the buyout were that he would receive:

1) 50% of the last catch, which he estimates would be worth $30,000.00;
2) $7,000.00 for the fishing licenses he sold to Defendants;
3) Return of his $20,000.00 down payment; and
4) Half of the BP settlement money, of which he was paid $31,000.00 but claims he is still owed approximately $40,000.00.

In all, Plaintiff claimed he is still owed approximately $97,000.00 by Defendants.

Defendant Nguyen disputed each of Plaintiff's claims, not only because there was no partnership agreement, but also because:

1) The last catch in December 2010 brought in no money at all because it was spoiled when the freezer broke, as evidenced by the lack of purchase price and inferior quality level shown at page 14 of Exhibit P-1;
2) Defendants never purchased a fishing license from Plaintiff because the purchase of the Miss Kim included all necessary licenses as evidenced in the sale documents, Exhibits D-9 and D-10;
3) Plaintiff made no contribution to the down payment and produced no evidence to support his claim of such a cash contribution; and
4) Defendants' BP claim was denied because the vessel was still titled in Kim Huynh's name at the time of the oil spill, therefore there was no BP settlement money to "split" with Plaintiff.[2]

---

[2] "The oil spill from BP's Macondo oil well and Deepwater Horizon drilling rig into the Gulf of Mexico, . . . continued from April 20 to July 15, 2010." *In re Deepwater Horizon*, 744 F.3d 370, 379 (5th Cir. 2014). Defendants purchased the Miss Kim in November 2009, before the oil spill. *See* Exs. D-9–D-10. However, the vessel was not registered in the name of Defendants' limited liability company until

Plaintiff offered no independent evidence to support any of the amounts he claims were owed other than his own testimony and a copy of the dishonored check for $20,000.00.  *See* Ex. P-4.  This check reflected a date of January 24, 2011.  *Id.*  When Plaintiff attempted to deposit the check over seven months later, on September 15, 2011, the check was returned for insufficient funds.  *Id.*  It is undisputed that Plaintiff sent Defendants the statutory notice required by Mississippi Code Annotated § 97-19-57, but Defendants did not honor the check.  Ex. P-10.

It is also undisputed that when Plaintiff received the check from Defendant Ly in January 2011, Ly told Plaintiff that the account upon which the check was drawn did not have sufficient funds to cover the check at that time.  Plaintiff alleges that Defendants

> requested that Mr. Pham hold the check until September 2011 to allow defendants time to pay all of the amounts owed to Mr. Pham via cash [and] Mr. Pham agreed to hold the check for those several months.

Pl.'s Proposed Findings [66], at 2.

Defendant Ly maintained that the check was given to Plaintiff to help him show proof of income and allow him to sponsor relatives from Vietnam to come to the United States, but was never intended to be deposited.  Defendants denied that the dishonored check represents any debt owed to Plaintiff.  Defendants contend

---

April 19, 2011.  Ex. D-7.  Defendant Nguyen did not produce any independent documentation to confirm his statement that the BP claim was denied.

that because no consideration was given for the check, it is not a valid instrument. Defs.' Proposed Findings [64], at 3.

### III. CONCLUSIONS OF LAW

A.  Partnership Claim

First, the Court must determine if a partnership was formed or existed between the parties. Plaintiff claims that he was a full 50% partner with Defendants in the Miss Kim's fishing operations.

Section 79-13-101 of the Mississippi Code defines a "partnership" as "an association of two (2) or more persons to carry on as co-owners a business for profit." Miss. Code Ann. § 79-13-101. In determining whether a partnership has been formed, courts look to (1) the intent of the parties, (2) participation in the control of the business, and (3) profit sharing. *Summers v. A-1 Cash, Inc.*, 911 So. 2d 975, 979 (Miss. Ct. App. 2005) (citing *Smith v. Redd*, 593 So. 2d 989, 993 (Miss. 1991)). "Mississippi Code Annotated § 79-13-202(c)(3)(ii) imposes a presumption of partnership when profit sharing is proven, unless the share of the profits is received through wages." *Carlson v. Brabham*, No. 2014-CA-367-COA, 2016 WL 211664, at *5 (Miss. Ct. App. Jan. 19, 2016).

Here, the credible testimony and evidence at trial does not support the conclusion that the parties were sharing profits or intended to form a partnership, as opposed to the typical captain/vessel-owner employment relationship. Defendant Nguyen owned five vessels and testified that he has no partner other than his wife on any of his other operations. Plaintiff did not attempt to explain why Defendant

Nguyen would conduct business with him on this one vessel based on an oral partnership agreement when Defendant Nguyen's other vessels are all owned solely with his wife through their company, Hong and Men V, LLC.  Similarly, Plaintiff owned his own vessel and received 100% of the profits from that operation before the parties' relationship began.  In short, Plaintiff did not provide a credible explanation or supply persuasive evidence that the intent of the parties was to form a partnership, or explain how a partnership agreement would have been to the benefit of either.

      Because the parties disagreed about their stated intent in forming an oral contract, whether it was a contract for employment or for a partnership, the Court assesses which version of events is the more credible by observing the witnesses' demeanor, evaluating the apparent truthfulness of the parties' respective explanations, and looking to the external evidence presented for confirmation of the terms suggested by the witnesses.  Although Plaintiff testified that he provided a $20,000.00 cash down payment on the Miss Kim, he submitted no proof of this transfer of funds other than his own testimony; he also testified that he never read the sale or mortgage documents, and was unfamiliar with the sale price and terms including the amortization schedule or the sale of licences along with the vessel.  Plaintiff also took no steps to protect his purported ownership interest by documenting his stake in the vessel.

      The Court does not find it credible that a person with Mr. Pham's claimed extensive experience in the fishing industry and history of vessel ownership would

put forth so significant a sum of money without any documentation of his contribution, without viewing any sale papers to confirm the purchase price, and without making any effort to protect that investment under the law.  By contrast, the Court finds that Defendants' version of events is far more credible, that Plaintiff was hired to captain the vessel, but was not intended to have an ownership interest.  Plaintiff's witness, Le, admitted that he was not privy to the precise terms of the parties' agreement and his testimony did not give the Court reason to credit Plaintiff's version of events over the far simpler and more believable scenario described by Defendants.

As to participation and control and profit sharing, it was undisputed at trial that a captain exercises extensive daily control over a vessel and his wages are typically paid as a share of the profits of any given catch.  Plaintiff has failed to demonstrate by a preponderance of the credible evidence, however, that he had any level of control or profit sharing beyond that of what is typical of a captain in the fishing industry.

Additionally, Plaintiff claims that, as a partner, he is entitled to a share of settlement money from Defendants' BP claim, but Plaintiff was unfamiliar with the amount or status of that claim, and he produced no evidence that he participated in the filing or administration of the claim.  In short, Plaintiff made no showing that he exercised authority beyond his role of Captain or had arranged to share in any profits or earnings beyond the typical profit-based wages of a captain.

Based on the testimony at trial and exhibits submitted, the Court finds by a preponderance of the evidence that Plaintiff has not established the existence of an oral partnership agreement.  Instead, the credible evidence supports the conclusion that Plaintiff's role was simply that of Captain on the Miss Kim.  Plaintiff's claim for breach of the partnership agreement will be dismissed.

B.   Bad Check Claim

The Court further finds that Plaintiff has not proven by a preponderance of the credible evidence that he is entitled to damages under Mississippi's bad check statutes for the dishonored $20,000.00 check, admitted in evidence as Exhibit P-4. Plaintiff and Defendant Ly both testified that when Plaintiff was given the check, Plaintiff was told that there were insufficient funds in the account to cover the draw.  Plaintiff contends that Defendants told him to hold the check for several months to allow the amounts to be paid in cash.  Pl.'s Proposed Findings [66], at 2. Accordingly, Plaintiff has admitted that, whatever the purpose of the check may have been, he was not led to believe that the account contained adequate funds at the time the check was given.

Mississippi Code Annotated Section 97-19-55 provides:

> (1) It shall be unlawful for any person *with fraudulent intent*:
> (a) To make, draw, issue, utter, deliver, or authorize any check . . . to obtain money, delivery of other valuable property, services, [or] the use of property . . . *knowing at the time of making*, drawing, issuing, uttering, delivering or authorizing said check . . . that the maker, drawer or payor has not sufficient funds in or on deposit with such bank, corporation, firm or person for the payment of such check . . . in full, and all other checks . . . upon such funds then outstanding;

14

Miss. Code Ann. § 97-19-55 (emphasis added).  A civil remedy for the payee of a check made in violation of Section 97-19-55 is afforded by Mississippi Code Annotated Section 11-7-12.  The civil remedy, therefore, incorporates a requirement of Section 97-17-55, that the maker have fraudulent intent and knowledge of insufficient funds at the time of the making of the instrument.  *See Broome v. Broome*, 832 So. 2d 1247, 1254 (Miss. Ct. App. 2002) (denying civil damages under Section 11-7-12 when the plaintiff presented no evidence that dishonored checks were issued with fraudulent intent).

In addition, the Mississippi Supreme Court has held that when parties agree to hold a check until a later date, the check then "represents a future obligation as to payment of the check not contemplated by [Section 97-19-55]."  *Henderson v. State*, 534 So. 2d 554, 556 (Miss. 1988).  This is so because Section 97-19-55 requires that the maker of the check "*know at the time* that she has not sufficient funds in or on deposit with such bank" to cover the draw.  *Id.* (emphasis in original, quotation marks omitted).  When the parties agree that the draw will take place at some future date, the maker typically will not know with any certainty whether or not funds will be available on that future date at the time the check itself is written.  *See id.*; *c.f. Lyles v. State*, 12 So. 3d 532, 536 (Miss. Ct. App. 2009) (holding fraudulent intent was still shown on a post-dated check because the account had already been closed when the check was written).  Thus, an agreement by the payee to deposit the check at a later date converts the promise into a future obligation of

15

payment that is not actionable under Mississippi's bad check statutes. *Henderson*, 534 So. 2d at 556.

Even if the Court were to fully accept Plaintiff's version of events surrounding the issuance of the $20,000.00 check, the Court finds as a matter of law that Plaintiff is not entitled to civil damages under Section 11-7-12.[3] Plaintiff has not established by a preponderance of the evidence that the check was issued with fraudulent intent or that Defendant Ly knew at the time she issued the check that there would be insufficient funds to cover the draw several months later.

## IV. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

The Court finds the credible testimony and evidence and the accepted facts and law do not support the conclusion that a partnership agreement was formed, or that the $20,000.00 check was given with fraudulent intent. Plaintiff has not carried his burden of proof on any of his claims raised in this case, and Plaintiff's claims will be dismissed with prejudice. The Court will enter a separate Final Judgment in conformity with and incorporating by reference the foregoing Findings of Fact and Conclusions of Law.

---

[3] The Court expresses no opinion on whether Plaintiff may have had some other cause of action based upon the circumstances surrounding this check, as no such other cause of action was pled, and as such, that question is not before the Court.

**IT IS, THEREFORE, ORDERED AND ADJUDGED**, that for the reasons stated herein, Plaintiff's claims in this case should be and are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 5th day of July, 2016.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE